THE STATE OF DELAWARE, upon the relation of DANIEL P. HAMILTON, *vs.* HIRAM GRAND LODGE OF FREE AND ACCEPTED MASONS OF THE STATE OF DELAWARE, a corporation under the laws of the State of Delaware.

*Mandamus—Legal Effect of Motion to Quash Return—Analogy to Demurrer—Sufficiency of Return.*

1. In mandamus proceedings, the motion to quash the return to the alternative writ has not the effect and scope of a demurrer in reaching back to the first defective pleading on either side, but is restricted in its operation to the return; and under such motion advantage cannot be taken of any material or substantial defect in the alternative writ.

2. The ancient rule as to the degree of certainty required in the return has been somewhat relaxed, and it is now the generally received doctrine that the same degree of certainty required in declarations and other pleadings at law is sufficient. An argumentative return, like any other argumentative pleading is bad. A return is faulty which states mere conclusions of law; and upon a mandamus to correct an improper amotion from an office, the return should set out all the facts necessary to show the court that the relator was removed in a legal and proper manner and for a legal cause.

3. When the respondent justifies his removal or expulsion of the relator, by the authority of the rules of Masonic government, and of the charter, constitution and by-laws of the corporation, such authority must be set out in his return in order that the Court may properly determine whether the removal was proper and legal.

(*March 28, 1899.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Hoffecker & Hoffecker* (*Leonard E, Wales, Jr.,*) for relator.

*Lewis C. Vandegrift* and *Charles M. Curtis* for respondent.

Superior Court, New Castle County, February Term, 1899.

MANDAMUS (No. 58, May Term, 1897).

The facts of the case and the contentions in the arguments of

the respective counsel sufficiently appear in the opinion of the Court.

PENNEWILL, J.:—On April 1, 1897, there was filed in this Court a petition of the State of Delaware upon the relation of Daniel P. Hamilton, praying that a writ of mandamus might issue, directed to the Hiram Grand Lodge of Free and Accepted Masons of the State of Delaware, commanding the respondent to restore the relator to the exercise of his rights as a member and corporator of said corporation, of and from which he alleged he had been unjustly and illegally deprived. Thereupon a rule was awarded by the Court on the respondent, to show cause why a writ of mandamus should not be issued as prayed for. On the return of said rule April 2, 1897, a writ of alternative mandamus was issued. To this writ the respondent on May 17, 1897, filed an answer or return; and on November 7, 1898, the relator filed a motion to quash said return for insufficiency, argumentativeness and ambiguity. It is this motion that has been argued before us, and which we are now to determine.

In order to intelligently pass upon this question it is necessary for us to consider (1) the contention made by counsel for the respondent, as to the legal effect of such a motion; and (2) what particularity is required in the return to a writ of alternative mandamus.

It was urged with much force by the counsel for respondent, that even if the return is invalid for the reasons assigned, it cannot avail the relator because his alternative writ is equally bad. His contention is that a motion to quash a return to the alternative writ has the same effect as a demurrer, and reaches back to the first fault committed by either party. That on the motion to quash, it is competent for the respondent to avail himself of any material defect in the alternative writ, or in the petition on which it was granted, because the motion is carried back to the first defective pleading. The respondent therefore insists that even though the return be fatally defective for insufficiency or argumentativeness, the alternative writ is equally so, and must fall under this motion. The authorities cited by the respondent on this point do not seem

to be very pertinent, and in fact we have not been able to obtain from adjudged cases, or text writers, much assistance in determining this question, which is an interesting one in itself, and important also because of the growing frequency of mandamus proceedings in this State.

At common law the relator in proceedings in mandamus could not test the sufficiency of the return to the alternative writ by way of demurrer, and this deficiency or want of procedure for testing the legality and sufficiency of the return, other than by motion to quash, seems to have given rise to the practice of allowing the relator, when he desired to dispute the sufficiency of the return, to move for a *concilium*, and thereupon to argue the validity of the return in point of law. This motion was regarded as in the nature of a demurrer. The method of procedure by the motion for a *concilium*, however, being attended by many inconveniences, a statute was enacted which gave to the relator the right to demur to the return. But prior to this statute, as well as after, the relator could at common law take advantage of a defective return, and test its sufficiency in point of law, by a motion to quash; and this method was usually adopted when the return was manifestly bad by reason of some defect appearing on its face.

*High on Ex. Leg. Remedies, Secs. 488 and 490-491.*

Although text writers, and courts, have quite uniformly held, that the motion to quash the alternative writ is in the nature of a demurrer, and while it might be contended that a motion to quash the return should have the like effect, yet we think the analogy ·to a demurrer could not be carried further than the immediate paper it is sought to quash. Necessarily the motion to quash the alternative writ could not extend further, because the writ is in fact the first pleading in the case, and is likened unto the declaration in an ordinary action at law. We have found no authority which has laid down the rule that a motion to quash the return had the peculiar force and effect of a demurrer in reaching back to the alternative writ. *High* in his work above mentioned, at *Section 493*, takes occasion to say that, " the familiar rule of pleading, that a

demurrer reaches back to the first fault committed by either party, applies with especial force in cases of mandamus;" but he does not at any time, when speaking of the motion to quash the return, give to it the same scope and effect. He does say that it was for the purpose of obviating the inconveniences arising from the former system of pleading that the relator was given by statute the right to demur to the return, and it is quite a significant fact that although under that "former system of pleading" the motion to quash was very commonly used to test the sufficiency of the return, yet it was deemed advisable to provide by statute that a demurrer might be employed for the same purpose. It would seem quite manifest that a demurrer possessed some advantages over the motion to quash, and probably the greatest was the very feature we are now discussing. We hold that the motion to quash in this case, is restricted in its operation to the return, and that under such motion advantage cannot be taken of any material or substantial defect, if any there be, in the alternative writ.

Such being the case, it becomes necessary for us to determine whether the return filed in this proceeding is so bad for insufficiency or argumentativeness that it should be quashed. "The English courts in the earlier decisions exacted a considerable degree of particularity in the return, but both in that country and in this," says the author above quoted, at Section 411, "the ancient rule as to the degree of certainty required, has been somewhat relaxed, and it is now the generally received doctrine that the same degree of certainty required in declarations and other pleadings at law is sufficient. No principle of the law of mandamus is better established than that an argumentative return, like any other argumentative pleading, is bad. And a return is faulty which states mere conclusions of law, without stating the facts, so that the Court may judge of their sufficiency. Upon a mandamus to correct an improper amotion from a municipal office, the return should set out with precision all the facts necessary to show that the relator was removed in a legal and proper manner and for a legal cause. If the respondent seeks to justify his nonexecution of the writ by a

return in the nature of a plea of confession and avoidance, the common law rules which apply to pleas of this nature are to be used in testing the sufficiency of the return. The respondent should state in direct and positive terms the matters of excuse or justification upon which he relies, and if he fails to meet this requirement it may be quashed for insufficiency. He should state the facts relied upon with such precision and certainty that the Court may be fully advised of all the particulars necessary to enable it to pass judgment upon the sufficiency of the return. When the writ issues to restore one to an office from which he claims to have been wrongfully removed, a return that he was not duly elected, admitted and sworn, is not sufficient, since the material suggestion in the writ is the removal, and the return should answer, not the words, but the material part of the writ. And in cases of mandamus to compel the restoration of persons who have been wrongfully removed from the enjoyment of their franchise as members of an incorporated association, the return should show all the facts necessary to the conviction and removal, both as regards the cause of disfranchisement and the mode of procedure.—*High on Ex. Leg. Remedies, Secs., 471, 474, 481.* To the same effect are other standard writers on the subject. And *Merrill at Section 275,* says, " When to a mandamus to restore a person removed from an office or membership in a corporation, an amotion is returned, the return must set out all the necessary facts precisely to show that the person was removed in a legal and proper manner, and for a legal cause. A return that the relator was removed for a violation of duty, or for disobeying the orders or laws, is too general; it should specify the charges, or the particular orders or laws which were disobeyed."

It is quite certain that in cases to compel the restoration of persons who are alleged in the writ to have been wrongfully removed from the enjoyment of their franchise as members of an incorporated association, it is necessary for the respondent in his return to set out clearly the authority to remove the relator, and it is not sufficient to aver generally that the removal was in accord-

ance with accepted rules of Masonic government and the charter, constitution and by-laws of the corporation. The provisions that confer such authority must be set out, in order that the Court may determine whether or not the relator was properly and legally removed. In the case we are now considering, the relator alleged in the alternative writ, not only that the act of the respondent of which he complains was unjust and illegal but also contrary to the accepted rules of Masonic government and to the constitution, charter and by-laws of the corporation; and while it is alleged generally in the return that the proceedings were in accordance with such rules, charter, constitution and by-laws, the parts thereof conferring such authority are not set out. It is insisted, however, that although this is true, and although the legal requirement as to the particularity of the return, is generally as above stated, yet it is subject to the qualification, that the return need not be more particular than the allegation or suggestion in the alternative writ; and inasmuch as the allegation in the return is as particular and specific as the allegation in the writ, the return is sufficient. There is undoubtedly such a qualification to the general rule, but we think in cases where the material allegation in the writ is the wrongful and illegal expulsion the return should answer, not the words merely, but the material part of the writ.—*High, supra, 481.* It was necessary, in order to make the expulsion legal, that it should have been made in accordance with the authority conferred by the rules, and the laws of the corporation, and such authority is relied on for the justification of the expulsion. It is quite impossible for the Court to pass judgment upon the regularity and legality of the proceedings unless the authority justifying the proceedings is stated in the return. It must be borne in mind that while it was incumbent on the relator in the alternative writ, or in his petition on which the writ was granted, to make out a *prima facie* case, it does not necessarily follow that he was bound to set out the said rules, charter, constitution and by-laws, or that it was necessary for him to allege anything more in this regard than that the expulsion was wrongful and illegal. But it was surely essential to

the proper justification and defence of the respondent that the authority conferred by such rules, charter, constitution and by-laws should have been followed, and in order for the Court to properly determine this matter it should have been set out in the return. This not having been done we adjudge the return insufficient, and grant the motion to quash the same. Inasmuch, however, as leave has been asked by the respondent to amend his return, in case it should be considered by the Court insufficient, and as such seems to be now the common practice, leave is granted the respondent to amend his return.